## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number: **21-01786-jw**

### ORDER ON OBJECTION TO CLAIMS

The relief set forth on the following pages, for a total of 14 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**12/21/2021**



_/s/ John E. Waites_

US Bankruptcy Judge
District of South Carolina

Entered: 12/21/2021

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Michael Paul Travers and April Elaine Travers,<br><br>Debtors. | C/A No. 21-01786-JW<br><br>Chapter 13 |

**ORDER SUSTAINING OBJECTION TO CLAIM**

This matter comes before the Court upon the Objection to Claim filed by Michael Paul Travers and April Elaine Travers ("Debtors"). Through the Objection, Debtors seek to disallow the secured claim filed by Aspen Properties Group LLC as Trustee of AG3 Revocable Trust ("Creditor"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Based on materials presented by the parties, the Court makes the following findings of facts and conclusions of law.

**FINDINGS OF FACT**

During the summer of 2007, Debtors were interested in improving their home by adding a porch to their residence at 516 Tram Boulevard, Summerville, South Carolina ("Property"). At this time, the Property was encumbered by a first-priority mortgage loan that was originated by Ivanhoe Financial, Inc. in 2003. To fund their home improvement project, Debtors contacted GMAC Mortgage LLC d/b/a Ditech ("Ditech") for financing after seeing a television advertisement. After the call, Debtors exchanged various paperwork with Ditech by mail to apply for a mortgage loan to fund their home improvement project. Ditech approved Debtors for a loan, and it offered Debtors a $20,000 home equity line of credit ("Second Mortgage"). Debtors accepted Ditech's offer and closed the Second Mortgage on July 14, 2007, by signing various loan documents from DiTech in their home.

According to Debtors' testimony at the hearing on their Objection to Claim, however, neither a licensed South Carolina attorney nor any Ditech representative was present at their home to participate in the closing or when Debtors signed the various mortgage loan documents. During the first two years of the Second Mortgage's repayment term, Debtors remitted timely payments. In August 2009, however, Mr. Travers was laid off from his job, and Debtors defaulted on their payments.

A decade after Debtors first defaulted, the Second Mortgage was ultimately assigned to the current holder—Aspen Properties Group LLC as Trustee of AG3 Revocable Trust ("Creditor")—on January 31, 2019. More than two years after transfer of the Second Mortgage to Creditor, Debtors filed their Chapter 13 bankruptcy with the Court on July 6, 2021.

Creditor timely submitted a proof of claim for the Second Mortgage on September 13, 2021. Debtors objected to Creditor's claim on September 30, 2021, asserting that Creditor failed to complete and file an accurate Form 410A with its filed proof of claim. Debtors further objected to Creditor's proof of clam because it inaccurately stated the amount owed under the terms of the Second Mortgage's promissory note. The Objection to Claim noted that a hearing for the Objection would be held on November 18, 2021. In response to the objection and without prior authorization from the Court, Creditor filed an amended proof of claim on October 25, 2021. The amended proof of claim, however, failed to fully address the issues raised by Debtors' Objection to Claim, and there is no dispute that Creditor's proof of claim remained inaccurate.[1] Three days after filing the amended proof of claim, Creditor's counsel filed a response to Debtors' Objection.

---

[1] Creditor filed a supplemental memorandum on December 9, 2021, which in part sought to present further argument for the allowance of Creditor's claim. This filing was over a week after the deadline set by the Court and well after the hearing at which Creditor bore the burden of proof on claims allowance; therefore it was not considered by the Court.

On November 10, 2021, and as a reply to Creditor's response, Debtors filed a Supplement to their Objection to Claim and for the first time in this bankruptcy case argued that Creditor was not entitled to enforce its foreclosure remedy under the Second Mortgage because a licensed, South Carolina attorney did not oversee the closing of the Second Mortgage. To support their argument, Debtors cited to the South Carolina Supreme Court's decision in *Matrix Financial Services, Corp. v. Frazer,* 714 S.E.2d 532 (S.C. 2011). Asserting a failure of Creditor's counsel to work with Debtors' counsel to communicate regarding a joint statement of dispute,[2] Debtors' counsel submitted a timely statement of dispute on November 15, 2021, to highlight the evidence and legal issues to be argued at the hearing on the Objection to Claim. In their statement of dispute, Debtors restated the argument that Creditor was not entitled to enforce its foreclosure remedy under the Second Mortgage because a licensed, South Carolina attorney did not oversee the closing of the Second Mortgage by citing *Matrix* and *State of South Carolina v. Buyers Service Co., Inc.,* 357 S.E.2d 15 (S.C. 1987) in their statement of dispute.

Creditor's counsel did not file a statement of dispute until the evening before the hearing on November 17, 2021, and cited *BAC Home Loan Servicing, L.P. v. Kinder,* 731 S.E.2d 547 (S.C. 2012) to note that the South Carolina Supreme Court limited the remedies for mortgage loan closings conducted without attorney supervision to loans closed *after* entry of the *Matrix* decision on August 8, 2011. During the hearing on November 18, 2021, Creditor's counsel stated that although she attempted to remedy the grounds for Debtors' Objection to Claim by filing an

---

[2] Parties to a contested matter are required by the undersigned's Chambers Guidelines and Operating Order to confer in advance of the hearing, discuss settlement, set forth issues and state the witnesses and evidence to be presented, along with the estimate of time needed for a contested hearing. The statement also meets the requirements of Rule 9014(e) of the Federal Rules of Bankruptcy Procedure. The parties are instructed to submit a joint statement of dispute no later than three business days before the hearing. In the absence of a joint statement, the parties may file a separate statement by the same deadline, but Counsel are not allowed to raise issues or arguments that were not timely or properly included in their pleadings.

amended proof of claim on October 25, 2021, the amended proof of claim remained inaccurate by failing to detail the existing prepetition arrearage in an accurately calculated Form 410A. To this end, Creditor's counsel admitted that the claim was incorrect and would require further future amendment to fully cure the defects identified in Debtors' Objection to Claim. Creditor presented no evidence supporting the claim at the hearing.

## CONCLUSIONS OF LAW

The "allowance or disallowance of a claim in bankruptcy is a matter of federal law that is left to the bankruptcy court's exclusive exercise of its equitable powers." *In re Devey*, 590 B.R. 706, 716 (Bankr. D.S.C. 2018) (citing *Katchen v. Landy*, 382 U.S.323, 329-30 (1966)). To this end, "[a] creditor who offers his proof of claim, and demands its allowance, subjects himself to the dominion of the court and must abide the consequences." *Id.* at 717 (quoting *Wiswall v. Campbell*, 93 U.S. 347, 351 (1876)).

Under the Bankruptcy Code, a proof of claim is deemed allowed unless an objection is filed. 11 U.S.C. § 502(a). If an objection to a claim is made, the Court, after notice and a hearing, shall determine the amount of the claim as of the date of the petition, and shall allow such claim in that amount, unless the claim is disallowed under exceptions listed in the Bankruptcy Code, including disallowance because a "claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." *See* 11 U.S.C. § 502(b). In conjunction with 11 U.S.C. § 502, "Rule 3001 of the Federal Rules of Bankruptcy Procedure governs the form and content of a proof of claim filed by a creditor." *In re Devey,* 590 B.R. at 718. If a creditor files a claim in accordance with the requirements of Rule 3001, the claim "constitutes *prima facie* evidence of the validity and amount of the claim." *Id.* (citing Fed. R. Bankr. P. 3001(f)).

If a claim or interest in debtor's property securing the claim is in writing, then a copy of that writing must be filed with the proof of claim. Fed. R. Bankr. P. 3001(c)(1). For claims filed against individual debtors, the creditor must provide the following information with the proof of claim:

> (A) If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.
>
> (B) If a security interest is claimed in the debtor's property, a statement of the amount necessary to cure any default as of the date of the petition shall be filed with the proof of claim.
>
> (C) If a security interest is claimed in property that is the debtor's principal residence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim. If an escrow account has been established in connection with the claim, an escrow account statement prepared as of the date the petition was filed and in a form consistent with applicable nonbankruptcy law shall be filed with the attachment to the proof of claim.

Fed. R. Bankr. P. 3001(c)(2).

If a creditor fails to provide any of the additional information required by Rule 3001(c), then the court may, after notice and hearing, take either or both of the following actions:

> (i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
>
> (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Fed. R. Bankr. P. 3001(c)(2)(D).

Under the Federal Rules of Bankruptcy Procedure, the burden of establishing the validity and amount of a bankruptcy claim shifts between the parties. *In re Brown,* 603 B.R. 786, 792 (Bankr. D.S.C. 2019). Rule 3001 governs the form and content of a proof of claim and provides that if the claim is filed in accordance with the bankruptcy rules, the claim shall have *prima facie* evidence of validity and amount. *Id.* (citing Fed. R. Bankr. P. 3001(f)); *see also Stancill v.*

*Harford Sands, Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 640 (4th Cir. 2004). In circumstances where Rule 3001's requirements are not met, the claim lacks *prima facie* evidence of validity and amount. *Id.* In that instance, the burden is on the claimant to establish the validity and amount of the claim. *See id.* (citing *In re Devey*, 590 B.R. at 721); *see also In re Mazyck*, 521 B.R. 726, 732 (Bankr. D.S.C. 2014). In such circumstances in which the claim lacks the *prima facie* presumption, the objecting party only needs to raise a basis for disallowance under 11 U.S.C. § 502(b) to satisfy its burden. *Id.*

Here, Debtors note Creditor's non-compliance with Rule 3001(c)(2) and challenge the accuracy of the Creditor's calculation of amounts due in their objection to claim. To this end, the Debtors' dispute over the Creditor's claim concerned the amount, validity, or enforcement of the claim. In this case, because its proof of claim did not comply with the requirements of Rule 3001(c)(2), Creditor had the burden of proving its claim and amounts owed by Debtors.

### I.     Creditor Failed to Prove Its Claim

Because Creditor has a secured claim that encumbers Debtors' primary residence, it was required to provide the following information with its proof of claim through an accurately completed Form 410A:

- An itemized statement of the interest, fees, expenses, and charges owed for the Second Mortgage; and

- A statement of the amount necessary to cure any default on the Second Mortgage as of the date of the petition.

*See* Fed. R. Bankr. P. 3001(c)(2)(A)-(C); *see also In re Brown,* 603 B.R. at 792 (proof of claim for security interest on a debtor's real property lacks validity if such claim is filed without an accurately calculated and completed Form B 410A).

The undisputed record in this case reflects that Creditor failed to file a complete and accurate Form 410A with its initial proof of claim.[3] Where Rule 3001's requirements are not met, the claim lacks *prima facie* evidence of validity and amount. *See In re Brown,* 786 B.R. at 791-92. At the hearing on Debtors' Objection, Creditor failed to present any evidence supporting the validity of the amount of its proof of claim. To this end, the Court sustains the Debtor's objection to Creditor's claim and disallows payment of the claim in Debtors' Chapter 13 case. *See In re Brown,* 603 B.R. at 796 (sustaining debtor's objection to claim where the evidence presented by a claimant was "insufficient to determine the amount of a claim," and thus, "the Court's determination must fall against the party with the burden of proof.").

II. **Creditor's failure to comply with the disclosure requirements imposed by Rule 3001(c)(2) also merits further remedies under Rule 3001(c)(2)(D).**

Whenever a claim holder fails to comply with the disclosure requirements imposed by Rule 3001(c)(2), Rule 3001(c)(2)(D) authorizes a court to use its discretion to "preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case." Fed. R. Bankr. P. Rule 3001(c)(2)(D)(i). Under the safe harbor provision in 3001(c)(2)(D)(i), however, the Court may not preclude the claim holder from presenting the omitted information if the court determines that the failure to comply with Rule 3001(c)(2)(A)-(C) "was substantially justified or is harmless." *Id.*

---

[3]     Filing an amended proof of claim in response to Debtors' objection to claim may not be sufficient to cure Creditor's defective proof of claim because filing an amended proof of claim is not an absolute right and Creditor failed to secure Court approval to file an amended proof of claim. *See In re Devey*, 590 B.R. at 727 ("While, as a general matter, claim amendments are often allowed to permit a claimant to cure a defect in its originally filed claim, there is no absolute right to amend a proof of claim, and undue prejudice to the opposing party or to other creditors, undue delay or bad faith are grounds to deny an amendment to a timely filed proof of claim."). In this case, the Court notes that considering an amended claim as a response to the objection would prejudice Debtors, but even if the Court allowed the amended proof of claim as a substantive response to Debtors' objection, Creditor's amended proof of claim still provides an inaccurate accounting of the amount required to cure the arrears for the Second Mortgage during Debtors' bankruptcy. This deficiency was admitted by Creditor's counsel at the hearing.

In this case, Creditor failed to present any argument or evidence showing that its non-compliance with the disclosure requirements of Rule 3001(c)(2)(A)-(C) "was substantially justified" or "harmless." Indeed, the facts of this case reflect that the defective and inaccurate disclosures made by Creditor in its proof of claim prejudiced Debtors. This Court has recognized that, "[a] debtor should be provided with sufficient information in a proof of claim to determine the amount and validity of claim filed against them without having to incur significant expense and delay." *In re Bowen*, 619 B.R. 135, 140 (Bankr. D.S.C. 2020). Here, the lack of accurate disclosures required by Rule 3001(c)(2)(A)-(C) on Form 410A made evaluation and treatment of the Second Mortgage in this Chapter 13 reorganization unreasonably burdensome on Debtors and caused them to incur significant attorney's fees and costs and delayed advancement of the Chapter 13 case. *See id.*

Therefore, pursuant to its authority under Rule 3001(c)(2)(D)(i), the Court will treat the information that was not properly disclosed in the proof of claim, as "omitted information" that cannot be presented during Debtors' bankruptcy case, including as grounds for objecting to confirmation, pursuing relief from stay, or in any other contested matter or adversary proceeding arising during Debtor's bankruptcy. *See* Fed. R. Bankr. P. 3001(c)(2)(D)(i); *see, e.g., In re Bowen*, 619 B.R. at 141 (precluding creditor from presenting any omitted information regarding its claim in any contested matter or adversary proceeding because of noncompliance with disclosure requirements of Rule 3001(c)): *In re Snedeker*, Bankr. No. 5-17-bk-01399-JT, 2018 WL 3583047, *4 (Bankr. M.D. Pa. July 25, 2018) (precluding presentation of omitted information in contested matter where creditor failed to provide any good faith basis for noncompliance with disclosure requirements imposed by Rule 3001(c)).

### III. Debtors' failure to timely challenge Creditor's enforcement of the mortgage lien after the bankruptcy case in the Objection to Claim precludes consideration of such a remedy.

Generally, liens pass through bankruptcy unaffected. *See Dewsnup v. Timm*, 502 U.S. 410, 417 (1992) (recognizing that pre-Bankruptcy Code law provided that liens pass through bankruptcy unaffected); *In re Hamlett*, 322 F.3d 342, 347-48 (4th Cir. 2003); *In re Barthelmes*, 318 B.R. 364, 369 n.8 (Bankr. D.S.C. 2004) (recognizing that creditor's lien passes through bankruptcy and remains subject to foreclosure as an *in rem* action against the collateral); *accord Ducker v. Standard Supply Co.*, 311 S.E.2d 728, 730 (S.C. 1984) ("A discharge of the personal liability of a debt or judgment does not affect the lien securing that debt or judgment."). Critically, the Bankruptcy Code provides for elimination of liens only under specified circumstances. *See, e.g.,* 11 U.S.C. § 506(d); *Burkhart v. Grigsby*, 886 F.3d 434, 437 (4th Cir. 2018) ("We, however, have held, consistent with every other circuit to have considered the question, that in a typical Chapter 13 proceeding, a bankruptcy court has the authority to strip off a completely valueless lien on a debtor's primary residence, thereby eliminating a lienholder's *in rem* rights against the collateral property.") (internal quotations omitted); *In re Lester*, No. 00-011184-W, 2001 WL 1806042, at *4 (Bankr. D.S.C. May 4, 2001) (recognizing availability of lien stripping in Chapter 13 cases). Actions seeking to determine the validity, priority, or extent of a lien usually require the commencement and service of an adversary proceeding under the Federal Rules of Bankruptcy Procedure Rules 7001-7004. *See Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir. 1995) ("[i]nitiation of an adversary proceeding is a prerequisite to challenging 'the validity or existence' of a lien against property of the estate in a Chapter 13 proceeding").

Citing the South Carolina Supreme Court's *Matrix* decision and alleging the absence of any oversight of the closing for the Second Mortgage by a licensed South Carolina attorney, Debtors invite the Court to expand the application of *Matrix* to the Second Mortgage pursuant to

Case 21-01786-eg    Doc 54    Filed 12/21/21    Entered 12/21/21 11:52:54    Desc Main
Document      Page 11 of 14

11 U.S.C. § 105(a) and the public policy interests that the South Carolina Supreme Court detailed in *State of South Carolina v. Buyers Service Co., Inc.*, 357 S.E.2d 15 (S.C. 1987). Under these decisions, a mortgage lender may not enjoy the benefit of equitable remedies, including foreclosure, when that lender fails to provide attorney supervision during the loan process as required by South Carolina law. *Matrix Financial Servs. Corp. v. Frazer*, 714 S.E.2d 532, 535 (S.C. 2011). South Carolina's preclusion of equitable remedies for a lender's failure to provide attorney supervision for closing a mortgage loan, however, only applies to mortgage loans that were closed after August 8, 2011, which is the date that the South Carolina Supreme Court entered its *Matrix* decision. *See BAC Home Loan Servicing, L.P. v. Kinder*, 731 S.E.2d 547, 550 (S.C. 2012) (concluding the creditor would not be barred from enforcing mortgage for regardless of whether an attorney participated in mortgage loan closing because mortgage loan was recorded on April 20, 2007).

The Court declines to address the execution issues at this time for several reasons. First, the argument based on *Matrix* and *Buyers Services* was not raised in the Debtors' initial Objection to Claim that was filed on September 30, 2021. Instead, the enforceability of foreclosure rights was first raised in a supplement to the Objection that was not filed and served until November 10, 2021—a mere eight days before the hearing on the Objection. Raising any supplemental issues or grounds for objection to Creditor's claim that were never covered or mentioned in the original Objection is improper because raising new arguments so close to the merits hearing does not meet the 30-day notice requirements of Rule 3007(a) of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 3007(a) ("An objection to the allowance of a claim and a notice of objection that substantially conforms to the appropriate Official Form shall be filed and served at least 30 days before any scheduled hearing on the objection or any deadline for the claimant to request a

Page **10** of **13**

hearing."); *see also In re Ambassador Park Hotel, Ltd.*, 61 B.R. 792, 800 (Bankr. N.D. Tex. 1986) (holding that eight days' oral notice of hearing on debtor's objection to claim in Chapter 11 proceeding was not adequate under rule requiring written notice to claimant at least 30 days prior to hearing).  Additionally, to the extent Debtors challenge the validity and extent of Creditor's lien, such a legal issue cannot be included in an objection to the allowance of a claim.  *See* Fed. R. Bankr. P. 7001(2) (designating proceedings to determine the validity, priority, or extent of a lien or other interest in property as an adversary proceeding); Fed. R. Bank. P. 3007(b) ("A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim….").

Second, the South Carolina Supreme Court has explicitly limited the application of its *Matrix* decision to mortgage loans closed after August 8, 2011, in *Kinder*. The undisputed fact in this case is that the Second Mortgage was closed on July 14, 2007, which appears to preclude the application of *Matrix*. *See Crop Prod. Servs., Inc. v. SCBT, N.A.*, No. 5:13-02841-JMC, 2014 WL 1796345, *8 (D.S.C. May 6, 2014) (affirming bankruptcy court's judgment denying motion to amend complaint to assert unclean hands to preclude enforcement of mortgage because *Matrix* ruling did not apply to mortgage loan originated in 2007).

Third, Debtors' citation to this Court's decision in *In re Chicora Life Ctr.*, 553 B.R. 61 (Bankr. D.S.C. 2016) does not provide any basis for the Court to expand the holding of *Matrix* under 11 U.S.C. § 105(a).

Finally, it appears that Debtors have ample opportunity to raise the questions of compliance with South Carolina law before a State Court under appropriate procedural circumstances or in this Court by adversary proceeding.[4]

### IV. Creditor's non-compliance with Rule 3001(c)(2) merits an award of reasonable attorney's fees and costs to Debtors.

Rule 3001(c) authorizes the Court to award reasonable attorney's fees and costs associated with litigating the merits of an objection to claim and compliance with Rule 3001(c) disclosures. Fed. R. Bankr. P. 3001(c)(2)(D)(ii); *In re Bowen*, 619 B.R. at 141 (awarding fees of $1,812.00 for non-compliance with Rule 3001(c)(1)). Under the circumstances of this case, an award of attorney's fees and costs to Debtors is appropriate. First, the Creditor provided no reasonable explanation for its noncompliance with the disclosure requirements of Rule 3001(c). Critically, the Chapter 13 Trustee, Debtors, and their counsel need an accurate calculation of the existing arrearage and outstanding prepetition balance for the Second Mortgage to determine the feasibility of a proposed plan of reorganization in Debtors' Chapter 13 case. To date, the accurate information required to advance this Chapter 13 case has never been provided and a reasonable explanation for its absence has never been articulated by Creditor. Under these circumstances, an award of reasonable attorney's fees to Debtors' counsel is appropriate.

Debtors' counsel submitted a statement of fees totaling $5,428.50 for attorney time of 14.10 hours at $385 per hour related to Debtor's Objection to Claim and related investigation, legal

---

[4] It is possible that Debtors have other applicable defenses to a foreclosure claim presented in State Court given the circumstances that they described through their testimony. *See, e.g., JP Morgan Chase Bank, Nat'l Ass'n v. Acheson*, App. Case No. 2016-000028, 2018 WL 776629 (S.C. Ct. App. Feb. 7, 2018) (unpublished). While the Court has identified state case law that prohibits foreclosure due to execution issues, this Court believes that the mortgage origination defects detailed in *Acheson* are best addressed by the State Court or in an adversary proceeding in this case. The Court also notes conflicting evidence presented during the hearing on the objection with Debtors' expressed testimony indicating that an attorney did not sign any of the loan documents or oversee closing and Creditor's evidence reflecting the signature of a licensed South Carolina attorney on the loan documents that Debtors signed. Debtors presented further evidence that that the attorney who signed certain loan documents was reprimanded by the South Carolina Supreme Court for failing to attend mortgage loan closings in person.

research, and hearing preparation. The Court, however, notes that 3.2 hours were dedicated to advancing the argument that Creditor should be precluded from enforcing its mortgage lien under the *Matrix* decision. Fees associated with that argument are not appropriate at this time. To this end, the Court concludes that Debtors should be awarded reasonable fees and costs in the amount of $4,196.50.[5]

## CONCLUSION

For the foregoing reasons, the Court hereby concludes the following:

(1)    Creditor's proof of claim for the Second Mortgage is disallowed, and the amended proof of claim filed in Debtors' Chapter 13 case is also disallowed;

(2)    Creditor failed to comply with the requirements of Rule 3001(c)(2) by filing an accurate and fully completed Form 410A with its proof of claim, and therefore, Creditor is precluded from presenting any omitted information or asserting any default related to the Second Mortgage in any contested matter or adversary proceeding arising in Debtors' Chapter 13 case or in any other way related to the administration of Debtors' bankruptcy;

(3)    Debtors' arguments regarding the validity and extent of the Second Mortgage Lien are denied without prejudice to being raised in the State Court or in an adversary proceeding; and

(4)    Within fourteen days from the entry of this Order, Creditor shall directly pay to Debtor's counsel the sum of $4,196.50 as reasonable attorney's fees and costs.

**AND IT IS SO ORDERED.**

---

[5]    The fee statement submitted by Debtors' counsel reflects a total of 3.2 hours dedicated to advancing the argument that *Matrix* applies and precludes enforcement of Creditor's mortgage loan. Because Debtors' counsel billed time at $385 per hour, the 3.2 hours dedicated to advancing the *Matrix* argument totals $1,232.00. Therefore, the reasonable fees to be awarded to Debtors' counsel totals $4,196.50 (i.e., $5,428.50 - $1,232.00).